UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

AIHUA ZENG,

      Petitioner,                             Case No. 1:26-cv-386

v.                                              Honorable Paul L. Maloney

KRISTI NOEM et al.,

      Respondents.
_____/

**OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**Discussion**

**I.    Procedural History**

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, accept jurisdiction over this action and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.9.)

In an order entered on February 6, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 3.) Respondents filed their response on February 11, 2026, (ECF No. 4), and Petitioner filed his reply on February 13, 2026, (ECF No. 5).

## II. Relevant Factual Background

"Petitioner is a native and citizen of China." (Parker Decl. ¶ 4, ECF No. 4-1, PageID.29; Pet., ECF No. 1, PageID.4.) Petitioner entered the United States without inspection in April 2023, and shortly thereafter, Department of Homeland Security (DHS) agents encountered Petitioner. (Parker Decl. ¶¶ 4–5, ECF No. 4-1, PageID.29.) At that time, DHS issued Petitioner a Form I-862, Notice to Appear, charging Petitioner with inadmissibility under § 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA). (*Id.* ¶ 6.) DHS then released Petitioner into the United States. (*Id.*)

On March 6, 2025, DHS took Petitioner into custody. (*Id.* ¶ 9, PageID.29–30.) On April 21, 2025, the Cleveland, Ohio, Immigration Court denied Petitioner's asylum application and ordered Petitioner removed to China. (*Id.* ¶ 11, PageID.30.) "Both parties waived their right to appeal this decision, and the removal order became final" at that time. (*Id.*) After initially refusing to cooperate with ICE Enforcement and Removal Operations (ERO), on July 1, 2025, Petitioner "complied with completing the request for identification documents needed to obtain a travel document." (*Id.* ¶¶ 13–14.) "On July 17, 2025, ICE ERO submitted a request for a travel document to [the] Removal and International Operations (RIO) Detention and Deportation Officer for China." (*Id.* ¶ 15, PageID.31.) "On July 24, 2025, ICE ERO completed a 90-day Post Order Custody Review," and "[t]he decision was made to continue detention based on a significant likelihood [of] removal to China in the foreseeable future." (*Id.* ¶ 16.) "On October 9, 2025, ICE ERO conducted a panel interview with [Petitioner]," and on October 23, 2025, the panel recommended that Petition remain in custody "because of the pending travel document request." (*Id.* ¶¶ 17–18.)

On November 1, 2025, ICE ERO contacted ICE Headquarters "to inquire about the status of the request for a travel document for [Petitioner]," and ICE Headquarters advised that they had

not received the required physical copy of the travel document request from ICE ERO. (*Id.* ¶ 19.) ICE ERO then re-sent the physical travel document request on November 15, 2025. (*Id.* ¶ 20.) Thereafter, on December 16, 2025, ICE ERO had to mail "a revised China Travel Document Request" to ICE Headquarters. (*Id.* ¶ 21.)

On January 11, 2026, ICE ERO contacted ICE Headquarters "to check on the status of the travel document request for [Petitioner]," and ICE Headquarters "advised that [Petitioner's] Chinese nationality verification remains pending with the government of China." (*Id.* ¶ 22, PageID.32.) On January 31, 2026, ICE ERO again contacted ICE Headquarters, and ICE Headquarters advised that "it can take months to get a travel document issued" and "there [is] no way to expedite the process." (*Id.* ¶ 23.) To date, there is no indication in the record presently before the Court that ICE has received any confirmation from China regarding ICE's "Chinese nationality verification" for Petitioner. (*See id.* ¶¶ 22–23.)

### III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

### IV.    Merits Discussion

The parties agree that because Petitioner has a final order of removal, Petitioner's present detention is governed by 8 U.S.C. § 1231. (*See* Resp., ECF No. 4, PageID.24; Pet., ECF No. 1, PageID.4.) However, Petitioner contends that his detention is unlawful and violates the Due

3

Process Clause of the Fifth Amendment. (Pet., ECF No. 1, PageID.7–9.) In response, Respondents argue that Petitioner's continued detention under 8 U.S.C. § 1231(a) remains lawful and does not implicate the constitutional concerns identified in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). (*See* Resp., ECF No. 4, PageID.24–25.)

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Here, as noted above, Petitioner's order of removal became final on April 21, 2025, and the 90-day removal period following the order expired well before Petitioner filed the present action. *See id.* § 1231(a)(1) ("The [90-day] removal period begins on . . . [t]he date the order of removal becomes administratively final.").

In *Zadvydas v. Davis*, the Supreme Court held that following the removal period, the Government may continue to detain the noncitizen for a "presumptively reasonable period" of time, which the Supreme Court concluded equaled a total of six months in detention. *See Zadvydas*, 533 U.S. at 701. Following that six-month period, "once [a noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*[1] "[O]nce [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

---

[1] The Court notes that the Supreme Court recently held that § 1231(a)(6) does not require the "Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022). The Court, however, did not reach Arteaga-Martinez's constitutional or *Zadvydas* claims, concluding that such claims were not properly before the Court. *See id.* at 583–84.

4

In this case, when Petitioner initiated this action on February 5, 2026, he had been in ICE custody for more than nine months following Petitioner's April 21, 2025, final order of removal. And, even if the Court calculated Petitioner's detention as starting on July 1, 2025, which is the date that Petitioner cooperated with ICE's request for identification documents needed to obtain a travel document, when Petitioner initiated this action, he had been in custody for more than seven months. Petitioner argues that there is a good reason to believe that no significant likelihood of removal exists because despite ICE ERO's repeated attempts to obtain travel documents from China, there is no indication that Respondents have received any confirmation from China regarding the travel document request for Petitioner, and Respondents' own declarant indicated that "it can take months to get a travel document issued." (*See* Reply, ECF No. 5, PageID.35.) And, in this case, it has been seven months, and based on this significant passage of time with no response, there is no indication that China will respond to the document request in the foreseeable future. (*See generally id.*) In response, Respondents provide a general statement, which is not specific to Petitioner's situation, indicating that ICE Headquarters has "confirmed that China was issuing travel documents in response to requests made by ERO," but "there [is] no way to expedite the process." (Parker Decl. ¶¶ 21, 23, ECF No. 4-1, PageID.32.)

Under these circumstances, the Court concludes that Petitioner has shown that there is "good reason" to believe that "there is no significant likelihood of removal in the reasonably foreseeable future" because Respondents have been unable to get travel documents from China for more than seven months, and based on Respondents' declarant's own statements, there is nothing to suggest that China will respond to the document request in the foreseeable future. *Zadvydas*, 533 U.S. at 701. Because Petitioner has met his burden, Respondents must respond with evidence sufficient to rebut that showing. *Id.* Respondents' sole evidence is that ICE submitted the travel

document request to China, and they make the general assertion that ICE Headquarters has "confirmed that China was issuing travel documents in response to requests made by ERO." (Parker Decl. ¶ 21, ECF No. 4-1, PageID.32.) As noted above, Respondents indicate that "it can take months to get a travel document issued" and "there [is] no way to expedite the process." (*Id.* ¶ 23.) Under these circumstances, Respondents have failed to respond with sufficient evidence to rebut Petitioner's showing that there is a "good reason to believe" that Petitioner will not be removed in the "reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. The Court, therefore, will grant Petitioner's § 2241 petition.

## V. Other Claims and Other Forms of Relief

Because the Court will grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

## VI. Proper Respondents

Respondents argue that the Detroit ICE Field Office Director is the only proper Respondent in this action, and they seek the dismissal of the United States Secretary of Homeland Security as a Respondent. The Court concludes that the ICE Detroit Field Office Director is not the only proper Respondent for the reasons set forth in the Court's analysis of the same argument in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *8–9 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *8–9 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *9–10 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *9–10 (W.D. Mich. Dec. 12, 2025).

To ensure that this Court's orders regarding release will bind at least one Respondent with authority to act in the event that Petitioner is transferred out of the Western District of Michigan,

the Court will retain the Detroit ICE Field Office Director and the Secretary for the Department of Homeland Security as Respondents.

## Conclusion

For the reasons discussed above, the Court will enter a judgment granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to release Petitioner from detention, subject, as applicable, to an order of supervision within five days of the date of this opinion and corresponding judgment. The Court will also order Respondents to file a status report within six days of the date of this Court's opinion and judgment to certify compliance with this opinion and the corresponding judgment.

Dated:   March 5, 2026                               /s/ Paul L. Maloney
                                                     Paul L. Maloney
                                                     United States District Judge